# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

LOYD W. HOLTZCLAW, )
)
    Plaintiff, )
)
v. )
) CV416-068
JOSE MORALES, Warden; )
RODNEY JACKSON, )
Unit Manager, )
)
    Defendants.

## **REPORT AND RECOMMENDATION**

Defendants move for judgment on the pleadings and dismissal of plaintiff Loyd Holtzclaw's 42 U.S.C. § 1983 Complaint. Doc. 18. Holtzclaw opposes. Doc. 23.

## A. BACKGROUND

Plaintiff is incarcerated at Coastal State Prison. Doc. 1. During an inspection, he tried to hide another inmate's cell phone with the use of his wheelchair. *Id.* at 10. Defendant Jackson, a Unit Manager at Coastal, spied the contraband transfer, confiscated the phone, admonished Holtzclaw for being "stupid and crazy," and placed him in an administrative segregation cell (the "hole"). *Id.* The cell lacked the "handicap bars on the wall" that Holtzclaw needs to get out of his chair

and into bed or onto the toilet. *Id.* When he pointed out the deficiency, Jackson replied that he "should have thought about that before" hiding the other inmate's phone and that he would "figure it out" himself. *Id.*

Two days after being stuck in the hole, plaintiff tried to move from his wheelchair to the bed but slipped. Doc. 1 at 10. He "busted [his] head on the wall and went to the floor," bleeding from the head and crying out for help for "45 minutes to an hour." *Id.* Eventually, someone came and called medical staff, and while his head injury was cleaned, nothing was done to address his complaints of back and neck injuries. *Id.* Plaintiff asked to be transferred to a handicapped accessible cell but was taken back to the same inaccessible cell, where he remained for an additional twelve days. *Id.* at 10, 14. He was given pain medication but continued to suffer "excruciating shocking pain to [his] neck and back." *Id.* at 10. No radiological imaging was ordered to determine the extent of his injuries. *Id.*

After a preliminary merits review, the Court greenlit Holtzclaw's Eighth Amendment deliberate indifference claims only as to his placement, and subsequent retention, in a handicapped inaccessible cell. Doc. 10. The Court dismissed, however, the medical staff

2

defendants. Docs. 13 & 18.

B.  ANALYSIS

Defendants argue that dismissal is appropriate because plaintiff has failed to exhaust his Prison Litigation Reform Act (PLRA) administrative remedies. Doc. 18. Plaintiff opposes.

Under the PLRA exhaustion provision, a prisoner must exhaust all available administrative remedies *before* filing an action that challenges the conditions of his confinement. *See* 42 U.S.C. § 1997e(a). Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999), *aff'd in part and vacated and remanded on other grounds by Harris v. Garner*, 216 F.3d 970 (2000) (en banc); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA"). When a defendant moves to dismiss and puts forward proof showing that plaintiff failed to exhaust and defendant did not inhibit his efforts to do so, the PLRA requires the Court to dismiss the

3

unexhausted claims.[1] *See Turner v. Burnside*, 541 F.3d 1077, 108-83 (11th Cir. 2008) (describing the two-prong "facial" and "factual" evaluation of exhaustion as a "matter in abatement," as it is a precondition to suit, not an adjudication on the merits); *Harris*, 190 F.3d at 1285-86. Simply put, if an administrative remedy is "available," it *must* be exhausted. 42 U.S.C. § 1997e(a).

The Georgia Department of Corrections maintains an administrative grievance procedure that is available to all inmates, including plaintiff. Doc. 18-2 (Affidavit of Robin Owens, Deputy Warden of Care and Treatment at Coastal) at ¶¶ 6-8. Every inmate receives an oral explanation of this process and written instructions. *Id.* at ¶ 6. Under the grievance procedure, an inmate must file his formal grievance within ten calendar days of the day he knew, or should have known, of the facts giving rise to his grievance. *Id.* at ¶ 12. After

---

[1] Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id*. at 89-91 (citation omitted); *see also Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006) (proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005).

4

screening by the Grievance Coordinator, the Warden investigates the complaint, and issues a written statement summarizing his grant or denial of the complaint. *Id.* at ¶ 13. If the inmate receives a denial, he has seven calendar days to file his appeal from the Warden's decision. *Id.* at ¶ 17. An appealed decision is reviewed at the Central Office, and a written appeal decision sent to the inmate. *Id.* at ¶¶ 17-19. Both the original grievance and appeal process must be complied with to fully exhaust available administrative remedies. *Id.* at ¶ 10. Because an administrative grievance procedure was in place and available for Holtzclaw's use, he was required to file a grievance and fully exhaust all of his available administrative remedies *prior* to filing his Complaint. *See Johnson*, 418 F.3d at 1156.

Plaintiff "slipped and caused his injuries to his head, neck and back" on December 10, 2015. Doc. 23 at 2. He was given a grievance "after or around (10) days or (11) days after" he fell, *id.*, and released from the hole 12 days post-fall, doc. 1 at 14.

Holtclaw has filed two grievances at Coastal. One, Grievance No. 206861 (staff negligence), was lodged October 18, 2015 -- two months before the events of the Complaint. Docs. 18-4 & 18-5. The

5

second, Grievance No. 212233 (medical), was lodged January 11, 2016, and alleges he was denied medical care despite being in serious pain. Docs. 18-4 & 18-6. In full, he complained that

> I slipped when I was try to get in the bed in the whole injuring my head, neck and back around December 10, 2015, and has being denied medical care for the last 30 days. I am in serious pain in my neck and back.
>
> RESOLUTION REQUESTED: To be seen by the doctor and have a x-ray to see what the problem is and see what need to be done to fix the problem to stop the pain and get some medication.

Doc. 18-6 at 2. The grievance was rejected as untimely, and Holtzclaw did not seek leave to file an out-of-time grievance or appeal the decision. Docs. 18-4 & 18-5 at 3 (noting also that plaintiff was seen daily by medical from December 8 through 22, 2015, when he was released from the hole).

Holtzclaw contends his grievance was timely filed, because when he requested one he was still in segregation. Doc. 23 at 2. He was released from the hole, however, on December 22, 2015. Doc. 1 at 14; doc. 23 at 6-7; *see also* docs. 18-5 at 3, 18-6 at 2-5. Even crediting his allegation that he was prevented from filing his grievance until his release from segregation, he did not file Grievance No. 212233 until January 11, 2016 -- twenty days after being released (and a full month

6

after his December 10, 2015 fall). *See Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008) (where a prisoner could have, but did not, pursue a "good cause waiver" after his grievance or appeal was dismissed as untimely, "he did not fully exhaust the administrative remedies available to him."); *Johnson*, 418 F.3d at 1158-59 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").

Further, even had he filed for a good-cause waiver, Grievance No. 212233 does not mention or describe either defendant, and it fails to allege any of the conduct underlying his claims against them. *See* doc. 18-6. The Grievance revolves around Coastal medical staff's alleged denial of medical care (deficient pain medication and diagnostic testing), *not* defendants Morales' and Jackson's alleged deliberate indifference to his serious medical condition and intentional, reckless placement of a wheelchair-bound prisoner in a non-accessible cell. *Id.*; *see* doc. 1.

"Section 1997e(a) requires a prisoner to exhaust all 'available' administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon

7

the grievance all the relevant information that he has, including the identity of any officials he thinks have wronged him." *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000); *see also Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006) ("a grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally."). Plaintiff's failure to name either defendant, despite their identities being readily available to him -- Morales being the Warden and Jackson being the officer who sent him into the hole in the first place -- renders his exhaustion attempt inadequate. *Brown, 212 F.3d at 1210* (although a prisoner cannot be required to provide information he does not have or cannot reasonably obtain, he must include "relevant information about his claims, including the identity of those directly involved in the alleged deprivation").

Consequently, Holtzclaw's administrative remedies remain unexhausted as to these defendants and his Complaint against them should be **DISMISSED**. *McDaniel v. Crosby,* 194 F. App'x 610, 613 (11th Cir. 2006) (even assuming the prisoner's claims had merit, "they could not be brought in federal court until he had sought relief through

established prison procedures" because "satisfaction of the exhaustion requirement [i]s a precondition to the filing of his suit, and, thus, must have occurred *before* the suit was filed.").[2]

## C. CONCLUSION

Because Loyd Holtzclaw has failed to exhaust his administrative remedies, his Complaint should be **DISMISSED** without prejudice.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve use a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The

---

[2] Defendants also move to dismiss based on the merits, but it is not necessary to reach that because dismissal without prejudice is appropriate for failure to exhaust administrative remedies. *Johnson*, 418 F.3d at 1159.

9

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this  1st  day of February, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA